IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Tony Jackson (M-07462), | ) |
|         Plaintiff, | ) |
|         v. | ) Case No. 23 C 50026 |
| Schipper, et al., | ) Hon. Iain D. Johnston |
|         Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Tony M. Jackson, an Illinois prisoner incarcerated at Dixon Correctional Center ("Dixon"), brought this lawsuit *pro se* under 42 U.S.C. § 1983 against Dixon correctional officers Jeff Schipper[1] and Joshua Fiorini ("Defendants") concerning the allegedly unsafe manner in which he was transported between Dixon and the University of Illinois ("UIC") Hospital in Chicago, Illinois, on August 18, 2021. The Court screened the operative complaint under 28 U.S.C. § 1915A and allowed an Eighth Amendment claim to proceed against Defendants. Defendants have now moved for summary judgment. For the reasons discussed below, the Court denies the motion.

**I.    BACKGROUND**

    **A.    Local Rule 56.1 of the Northern District of Illinois**

Local Rule 56.1 governs the procedures for filing and responding to motions for summary judgment in this Court. Defendants filed with their motion a Local Rule 56.1 statement of facts (Dkt. 58), and as required by Rule 56.2, served Plaintiff with a "Notice to Unrepresented Litigant Opposing Summary Judgment", (Dkt. 59). Nonetheless, Plaintiff filed a single "response"

---

[1] Officer Schipper's name was originally misspelled in the caption.

document that is interspersed with additional facts, responses to Defendants' facts, and argument. (Dkt. 62.)

The Court may require strict compliance with Local Rule 56.1 from all parties. *See Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405, 414 (7th Cir. 2019); *Wilson v. Kautex, Inc.*, 371 F. App'x 663, 664 (7th Cir. 2010) (citing *Greer v. Bd. of Educ.*, 267 F.3d 723, 727 (7th Cir. 2001)). At the same time, most (but not all) of the facts in Plaintiff's response concern matters to which he could testify based on his personal knowledge. Defendants also rely almost entirely on Plaintiff's deposition testimony (indeed it is the only exhibit cited in their Local Rule 56.1 Statement) and, for the most part, they do not dispute Plaintiff's version of the events giving rise to his claim. The Court therefore will consider facts identified in Plaintiff's response so long as the facts are relevant, admissible through Plaintiff's testimony, and consistent with his deposition testimony. *See Adams v. Falkner*, No. 18 C 8223, 2021 WL 2681891, at *1 (N.D. Ill. June 30, 2021) (discussing discretion to overlook noncompliance with local rules); *see also Bentz v. Hardy*, 638 F. App'x 535, 536 (7th Cir. 2016) (explaining that failure to properly respond to movant's statement of facts is not fatal where movant principally relies on non-movant's deposition testimony and non-movant's version of events is undisputed). The Court is mindful that the moving party has the "ultimate burden of persuasion" to show entitlement to judgment as a matter of law. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006).

    **B.    Material Facts**

With the foregoing standards in mind, the following facts are taken as true (unless noted otherwise) for deciding Defendants' motion.

Plaintiff is in IDOC custody and has been incarcerated at Dixon since 2016. (Dkt. 58, Defs. L.R. 56.1 Stmt. of Material Facts ("DSOF") ¶ 1.) Plaintiff has been diagnosed with

Crohn's disease and ulcerative colitis, and he receives infusion treatments for these conditions every other week at UIC Hospital. (DSOF ¶ 3.)

On August 18, 2021, the Defendants transported Plaintiff by van from Dixon to UIC Hospital for one of his infusions. (DSOF ¶ 6.) Plaintiff was shackled with handcuffs and leg irons. (DSOF ¶ 7.) He used a "thick wooden box" with stairs on it to get up into the back seat of the van. (DSOF ¶ 7.) The Defendants fastened a seatbelt on Plaintiff, placed the wooden box in the trunk of the van, and then drove Plaintiff to UIC Hospital. (DSOF ¶ 7.)

Both Defendants escorted Plaintiff into his appointment. (Dkt. 62, Pl.'s Response ("PRESP") pg. 2.) The appointment was running two-to-three hours behind, and both officers acted, in Plaintiff's view, impatiently and irritated throughout the appointment, complaining and asking questions like, "when is [the] infusion going to start?" and "what time is the medication gonna get here?". (PRESP pg. 2.) They kept attempting to touch the infusion machine, and Plaintiff cursed at them and told them to stop and also to stop complaining. (PRESP pg. 2.)

When it was time to leave, Officer Schipper fastened Plaintiff's shackles and handcuffs too tightly according to Plaintiff. (PRESP pg. 3.) Officer Schipper then went to get some scissors and "started walking towards [Plaintiff] with scissors in his hand." (PRESP pg. 3.) Plaintiff told Officer Fiorini to stop his partner. (PRESP pg. 3.) Then Plaintiff and Officer Schipper argued and traded insults. Once Officer Schipper's face "got red", Officer Fiorini diffused the situation. (PRESP pg. 3.)

As they started to leave the hospital room, Plaintiff repeatedly asked the Defendants for a wheelchair because the medication had made him woozy, but the officers refused. (PRESP pg. 3-4.) Plaintiff therefore wobbled to the van. (PRESP pg. 4.)

3

Plaintiff got into the van and sat down. (PRESP pg. 4.) Officer Schipper put the thick wooden box in front of Plaintiff instead of in the trunk. (PRESP pg. 4.) Officer Schipper then closed the sliding door. (PRESP pg. 4.) Plaintiff yelled out, "you forgot to put my seatbelt on". (PRESP pg. 4.) Plaintiff then also immediately told Officer Fiorini that Officer Schipper forgot his seatbelt, and Plaintiff asked Officer Fiorini to tell Officer Schipper to put on the seatbelt. (PRESP pg. 4.) Officer Fiorini ignored Plaintiff, so he shouted louder. (PRESP pg. 4.) When Officer Schipper got back in the van, Plaintiff again asked him to put on his seatbelt. (PRESP pg. 4.) Officer Schipper said, "you're ok, we'll get you back safe." (PRESP pg. 4.) Officer Fiorini then said, "I'm a good driver". (PRESP pg. 4.) Plaintiff asked Officer Fiorini to put his seatbelt on, but Officer Fiorini declined, saying, "I'm in the driver's seat". (PRESP pg. 4.) Both officers then put on their own seatbelts, turned the radio on, and laughed. (PRESP pg. 4.)

On the drive back, Plaintiff attempted to doze off but was unable to because he was scared by Officer Fiorini's driving. (PRESP pg. 4.) According to Plaintiff, Officer Fiorini was "speeding way too fast", "carelessly/recklessly following [cars] closely", and "passing vehicles at inappropriate times", and "swooping" and "swerving". (DSOF ¶ 9; PRESP pg. 4.) Plaintiff yelled, "damn man slow down", but Defendants did not respond, and Officer Fiorini did not adjust his driving. (PRESP pg. 4.) It started to rain, but Officer Fiorini continued driving in the same manner. (PRESP pg. 4.) Plaintiff yelled out two times, "slow the fuck down". (PRESP pg. 5.) Officer Fiorini then turned up the radio volume. (PRESP pg. 5.)

About five to six minutes later, while it was still raining, Officer Fiorini had to slam on the brakes and swerve to avoid rear-ending the car in front of them. (PRESP pg. 5; DSOF ¶ 9.) Plaintiff was fully shackled and had his feet on the wooden box in front of him at this time. (PRESP pg. 5.) Because of the shackles he was unable to brace himself, and Plaintiff was dislodged from

4

his seat and, in his words, "thrown like a projectile". (PRESP pg. 5; DSOF ¶ 10.) He hit his head on the gate or cage separating him from the Defendants in the front, and he fell to the floor. (PRESP pg. 5; DSOF ¶ 10.) He suffered a bang to the right side of his head, two twisted ankles, a cut on his leg, scraped elbows, and pain in his neck. (PRESP pg. 5; DSOF ¶ 10.) As Plaintiff was getting up from the floor, he saw the two officers staring back at him, and they made "sarcastic" comments about him no longer being in his seat. (PRESP pg. 5.) While laughing, one of the officers asked Plaintiff if he was ok. (PRESP pg. 5.) When Plaintiff shook his head indicating no, the officers told him that he could see a doctor at Dixon. (PRESP pg. 5-6.)

This lawsuit followed in January 2023. The Court allowed Plaintiff's pleadings to proceed past screening on an Eighth Amendment claim that Defendants were deliberately indifferent to Plaintiff's safety when they transported him on August 18, 2021. (Dkt. 25.) The Court dismissed all other claims.

## III. SUMMARY JUDGMENT STANDARD

Summary judgment is warranted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[W]hen a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The Court considers relevant evidence in the light most favorable to the non-moving party and draws reasonable inferences in the non-moving party's favor. *Logan v. City of Chicago*, 4 F.4th 529, 536 (7th Cir. 2021) (citation omitted). The Court does not weigh the evidence, judge witness credibility, or determine what is true. *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). It determines only whether there is an issue of triable fact. *Id.*

IV.     ANALYSIS

The Eighth Amendment's prohibition against cruel and unusual punishment requires prison officials to "take reasonable measures to guarantee the safety of inmates." *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (citations omitted). Prison officials may be liable for a violation of the Eighth Amendment when they knew that the prisoner "faced a substantial risk of serious harm, and yet disregarded that risk by failing to take reasonable measures to address it." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (citing *Farmer,* 511 U.S. at 847).

Defendants argue that they are entitled to summary judgment in their favor on three bases: (1) Defendant Schipper was not personally involved in any deprivation of constitutional rights because he was not driving the van; (2) Defendant Fiorini's driving did not rise to the level of a constitutional violation; and (3) inmates do not have a constitutional right to seatbelts during transport. (Dkt. 57.) Essentially, citing traffic accident cases involving state actors, Defendant Fiorini argues that he is entitled to summary judgment because the undisputed facts show, at most, that he drove negligently, and Officer Schipper argues that he is entitled to summary judgment because he was not the driver and there is no vicarious liability under Section 1983. (Dkt. 57, pg. 5-9.) Defendants present the lack of seatbelts as a separate issue. (*Id.*, pg. 9.)

The relevant question, however, is not whether individual components of the transport violated the Constitution. The relevant question is whether the manner in which Plaintiff was transported as a whole put him at substantial risk of serious harm and whether Defendants appreciated and failed to take reasonable measures to address the risk.

It is true that the Constitution does not guarantee seatbelts during transport, so the failure to provide a seatbelt generally is not enough to establish a claim under Section 1983. *Dale v. Agresta*, 771 F. App'x 659, 661 (7th Cir. 2019) ("Neither the Supreme Court nor this court has

ruled that transporting an inmate without a seatbelt creates an intolerable risk of harm."). There are instances, though, where courts have found that the lack of a seatbelt along with other exacerbating circumstances—such as reckless driving—may violate the Constitution. *See, e.g., Brown v. Fortner*, 518 F.3d 552, 559 (8th Cir. 2008) (finding driver's refusal to fasten inmate's seatbelt, driving in excess of speed limit, and following too closely (among other things) sufficient to show deliberate indifference to inmate's safety); *see also Rogers v. Boatright*, 709 F.3d 403, 409 (5th Cir. 2013) (concluding that allegations that inmate sustained injury because driver of prison van stopped abruptly even though he knew inmate was shackled, handcuffed, and not secured with a seatbelt presented "a nonfrivolous argument" that driver violated the Eighth Amendment); *Taylor v. Stateville Dep't of Corrs.*, No. 10 C 3700, 2010 WL 5014185, at *1 (N.D. Ill. Dec. 1, 2010) (explaining that allegations that inmates repeatedly "slammed" into each other during transport, with enough force to cause injury, suggests reckless driving).

      Here, the undisputed facts construed in Plaintiff's favor show that: Plaintiff's infusion treatment had run several hours behind; Plaintiff and Defendant Schipper had argued before the return trip; Plaintiff was woozy from his infusion treatment; Defendant Schipper did not secure Plaintiff or the wooden box in the vehicle on the return trip, whereas Defendants had secured them on the trip to the hospital; Plaintiff was unable to brace himself because he was handcuffed and shackled; Defendants ignored his requests for his seatbelt to be fastened and to drive more carefully; and Defendant Fiorini then drove, braked, and swerved cars in a manner that eventually caused Plaintiff to be ejected from his seat and land on the floor, hit his head, and sustain other injuries. Road conditions were presumably less than ideal because it was raining. But a jury could nevertheless conclude from these facts that Defendants were both personally involved in Plaintiff's transport, but deliberately indifferent to his safety.

7

Whether Defendants' conduct amounted to deliberate indifference is a disputed question of fact. Based on the evidence before the Court, a reasonable jury could find that Defendants' manner of transporting Plaintiff was so reckless as to constitute deliberate indifference. *See Brown*, 518 F.3d at 559 (explaining that reasonable jury could find van driver's refusal to fasten inmate's seatbelt, driving in excess of speed limit, and following too closely (among other things) demonstrated deliberate indifference). A reasonable jury also could find that Defendants were merely negligent or, even, that they took reasonable steps to ensure Plaintiff's safety. The question, however, remains one for the jury. Consequently, Defendants are not entitled to judgment as a matter of law.

V.   **CONCLUSION**

Defendants' motion for summary judgment [56] is denied. In light thereof, Plaintiff's motion to inform [60] is denied as moot. The Clerk is directed to correct the spelling of Defendant Schipper's name on the docket and caption of this case.

Date: September 5, 2025          By: _____
                                     Iain D. Johnston
                                     United States District Judge